UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDY L. SNIDER,

       Plaintiff,

v.                                     Case No. 1:06-CV-211
                                     Hon. Gordon J. Quist
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claim for disability insurance benefits (DIB).

       Plaintiff was born on June 14, 1953 and has a tenth grade education (AR 91, 296).[1]

She suffered an injury on May 10, 1998, when an Alzheimer's patient fell on her (AR 308-09). Prior

to her injury, she had employment as a cook, bartender, housekeeper, packager and donut maker (AR

299-301).

       Plaintiff filed two previous claims for DIB.  In 1998, plaintiff filed a claim alleging

a disability onset date of May 10, 1998 (AR 17).  The claim was denied initially, on reconsideration,

and in an ALJ's decision dated January 4, 2000 (AR 17).  Plaintiff filed an appeal with the federal

district court, which affirmed the ALJ's decision (AR 17).  *See Snider v. Commisioner of Social*

*Security*, 1:00-cv-558 (W.D. Mich. Sept. 4, 2001).  Plaintiff took no further appeals of that decision.

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff filed her second claim on June 9, 2000, alleging the same disability onset date (AR 17). The claim was denied initially and on reconsideration (AR 17).  She requested an administrative hearing, but withdrew the request (AR 17).

Plaintiff filed her current application for DIB on April 2, 2003 (AR 17).  Once again, plaintiff alleges that she became disabled on May 10, 1998 (AR 91).  Plaintiff identified her disabling conditions as low back pain, spasms in her right leg, headaches, migraine headaches, asthma, a rupture in her stomach muscles, depression, and panic attacks (AR 302-08, 310-16).  After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on July 26, 2005 (AR 17-27).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence.

2

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

3

caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

As an initial matter, the ALJ found no new and material evidence to warrant re-opening plaintiff's prior applications (AR 26).  Plaintiff's claim failed at the fourth step of the five-step evaluation.  Following the five steps, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 26).  Plaintiff held a number of different jobs after her injury, including: store clerk (2001), a cook (2001-02); clerk at an auto auction (2002-03) (AR 20).  However, the ALJ characterized these post-injury jobs as unsuccessful work attempts rather than substantial gainful employment (AR 20).  Second, the ALJ found that she suffered from severe impairments of chronic low back pain and depression (AR 26).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 26).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "for a narrowed range of light work" (AR 27).  Specifically:

> She could lift and/or carry 20 pounds occasionally and 10 pounds frequently; and in an 8-hour workday with normal breaks she could stand and/or walk for a total of 6 hours, sit for a total of 6 hours, and do unlimited pushing and/or pulling.  She could occasionally climb, balance, stoop, kneel, crouch and crawl.  She should avoid even

> moderate exposure to fumes, odors, dusts, gases, and poorly ventilated areas. The only limitations as a result of her mental impairment would be that the claimant would be limited to unskilled work. The claimant has a moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation.

(AR 27). The ALJ found that plaintiff's past relevant work as a food/beverage preparation worker, a packer, and a food preparation worker did not require the performance of work-related activities precluded by her RFC (AR 27). In addition, her medically determined back disorder and affective disorder did not prevent plaintiff from performing her past relevant work (AR 27). The ALJ also found that plaintiff's allegations regarding her limitations were not totally credible (AR 26). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 27).

## III. ANALYSIS

Plaintiff raises two issues on appeal.

> **A.     The ALJ did not properly assess mental residual functional capacity as required by SSR 96-8p and 20 C.F.R. § 404.1545, and his assessment is not supported by substantial evidence.**

First, plaintiff contends that the ALJ failed to perform a function by function analysis of her mental impairment as required by SSR 96-8p and 20 C.F.R. § 404.1545. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and*

5

*Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

The regulations require the Commissioner to evaluate a claimant's mental impairments:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c).

Here, plaintiff contends that the ALJ did not identify her functional limitations, but merely determined that she had a severe mental impairment that limited her to unskilled work. Plaintiff's Brief at 5.  Plaintiff also contends that the ALJ failed to address the functional limitations identified by her examining psychologist, Dr. Greenbaum, such as a poor ability to "follow work rules, relate to co-workers, use judgment, deal with work stress, function independently, maintain attention/concentration, understand, remember, and carry out detailed but not complex job instructions, behave in an emotionally stable manner, and relate predictable in social situations." *Id.*

Plaintiff's contention that the ALJ must perform a function by function analysis of her mental impairment is based upon the fourth paragraph of the "stated purpose" of  SSR 96-8p, which provides as follows:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Plaintiff's contentions are without merit.  First, SSR 96-8p does not require the ALJ to  prepare a lengthy function-by-function analysis.  "Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."  *Delgado v. Commissioner of Social Sec.*,  30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted).  In addition, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged."  *Id.* at 547.

Here, the ALJ sufficiently addressed plaintiff's mental impairments. In his RFC determination, the ALJ found that plaintiff "has a moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation" (AR 27).  Based on this finding, the ALJ concluded that "[t]he only limitations as a result of her mental impairment would be that the claimant would be limited to unskilled work" (AR 27). Unskilled work, by definition, incorporates some non-exertional components, consisting of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Such work involves simple and routine tasks. *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000). *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment).  Accordingly, the ALJ properly assessed plaintiff's mental impairments.

7

Second, plaintiff asserts that the ALJ did not adequately address the serious issues raised by an examining psychologist, Dr. Greenbaum.    Dr. Greenbaum examined plaintiff on January 24, 2005, two days before the administrative hearing (AR 24).    He diagnosed her as suffering from a generalized anxiety disorder and a major depression, single episode, mild (AR 225). In his deposition, Dr. Greenbaum reported that plaintiff was seriously ill. For example, she could not handle her own funds, she could "barely get by with dressing herself and functioning on a day-to-day basis" (AR 227).  In his report, Dr. Greenbaum notes that plaintiff reported a suicidal ideation ("I picture myself hanging in the garage and my husband comes home and sees me") (AR 235).

The ALJ gave little weight to Dr. Greenbaum's report and deposition "as his opinion is based on one short contact with the claimant at the request of her attorney who had stressed that it was 'urgent'" (AR 24). The ALJ contrasted Dr. Greenbaum's opinions with plaintiff's daily activities to show that she is not limited to such a degree:

> [Plaintiff] reported to Dr. Vander Woude [in June 2003] that she got along well with her family and with co-workers and that she liked to draw, write poetry, and use her computer.  She reported that in a typical day she would get up at 4:45 a.m., make her husband's lunch, wake her daughter, have coffee, shower and dress, talk to her mother on the telephone, listen to country music, read, do the dishes, cook, fold clothes, and dust.  She reported that she attended church regularly and went out to a restaurant occasionally.

(AR 24, 186-91).  Plaintiff reported difficulty getting and staying asleep, nightmares every night, and reported low energy and a sense of hopelessness (AR 21). However, she was fully oriented, had good memory recall and denied suicidal ideations (AR 21). Dr. Vander Woude diagnosed her as suffering from dysthymic disorder (AR 21). The doctor's conclusions indicate that plaintiff had some mild symptoms but was functioning pretty well (AR 21).   In his deposition, Dr. Greenbaum minimized Dr. Vander Woude's opinions, stating that plaintiff "felt very uncomfortable with [Dr.

8

Vander Woude], she didn't like him, she didn't trust him, she didn't feel comfortable in discussing some of these emotional issues with him" (AR 226).

The psychologist's opinions differ.  After reviewing the entire record, the ALJ chose to accept Dr. Vander Woude's opinions over those expressed by Dr. Greenbaum.  It is the ALJ's function to resolve such conflicts in the evidence and determine issues of credibility. *See  Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Accordingly, the ALJ could properly discount Dr. Greenbaum's opinions with respect to plaintiff's limitations.

> **B.     The ALJ failed to pose hypothetical questions to the vocational expert that reflected the specific mental limitations established by the record as a whole.**

Next, plaintiff contends that although the ALJ concluded that plaintiff had a severe mental impairment, he "completely ignored this impairment and its limitations when he posed his hypothetical questions to the vocational expert."  Plaintiff's Reply Brief at 3.  "Consequently, the vocational expert's testimony did not accurately reflect [plaintiff's] mental impairments or limitations resulting from her mental impairments and cannot be used as substantial evidence to support the ALJ [sic] decision." *Id.*  The court disagrees.

It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *see also* 20

C.F.R. § 404.1565.

A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F. 3d 820, 827 (8th Cir. 2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, No. 90-2084, 1991 WL 100547 at *3 (6th Cir. June 11, 1991); *Rivera v. Barnhart*, 239 F. Supp. 2d 413, 421 (D. Del. 2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

Here, the ALJ used the vocational expert's (VE's) testimony to assist him in deciding whether plaintiff could perform her past relevant work:

> At the prior hearing, the vocational expert testified that the claimant had unskilled past relevant work ranging from light to heavy work. In the instant case, the vocational expert testified that the claimant has past relevant work which was unskilled and required light physical exertion. His testimony was based on the claimant's description of her jobs and the vocational reports completed by the claimant. In view of the disposition in this case, the undersigned has determined that it is not necessary to resolve this discrepancy.

> To further clarify matters, the Administrative Law Judge asked the vocational expert whether an individual of the claimant's age, education, past relevant work experience, and residual functional capacity, as determined, could perform any of her past relevant work. The vocational expert testified that, assuming the hypothetical individual's specific work restrictions, such individual would be capable of performing all past relevant work of the claimant; however, the undersigned

precludes the job as cleaner based on the exposure to fluids and pulmonary irritants.

(AR 25-26) (internal citation omitted).

The ALJ posed three hypothetical questions to the VE (AR 336-39). The court agrees with plaintiff that these hypothetical questions did not reference plaintiff's mental impairments as set forth in the ALJ's RFC determination.  Only the first hypothetical question included any limitation for plaintiff's mental impairments, i.e., the hypothetical person "would be occasionally distracted by pain while trying to work" (AR 336-39).   Nevertheless, the ALJ's failure to address plaintiff's mental impairments in these hypothetical questions does not warrant a remand.  The VE testified that plaintiff's past relevant work as a cleaner, food and beverage preparation worker, and packer were all classified as light, unskilled work (AR 336).  The ALJ found that plaintiff's mental impairments restricted her to unskilled work (AR 27).  Based on the VE's testimony, all of plaintiff's past relevant work meets this restriction.  It would serve no purpose to remand this matter for additional evidence.  "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Accordingly, the ALJ's determination that plaintiff could perform her past relevant work is supported by substantial evidence.

## IV.    Recommendation

I  respectfully recommend that the Commissioner's decision be affirmed.

Dated:  January 8, 2007                             /s/ Hugh W. Brenneman, Jr.
                                                    Hugh W. Brenneman, Jr.
                                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).